NATIONAL SURETY CO. v. JENKINS et al.*

Circuit Court of Appeals, Eighth Circuit.
March 28, 1927.

No. 7409.

**1. Judgment ⬦720—Judgment In previous suit, seeking relief on different cause of action, is conclusive only as to points actually adjudicated therein.**

Where surety, interpleaded in action against receiver for principal, sought relief on a different and distinct cause of action from one subsequently asserted by it, the judgment in the former suit is conclusive only as to such points or questions as were actually in issue and adjudicated therein.

**2. Judgment ⬦739—Claim held not concluded by decree where it was not and could not properly have been litigated, though in issue by pleadings.**

Where claim of surety against receiver for principal was a matter which could not properly have been litigated in former suit against receiver wherein surety was interpleaded, and such matter was not actually litigated, and was not necessarily determined by the decree, in former suit, the surety is not concluded by such decree, although its right to such claim was put in issue by pleadings in such action.

**3. Judgment ⬦731—Surety mistakenly seeking enforcement of claim on indemnity agreement in suit in which it was interpleaded is not precluded from enforcing right in independent action.**

Where surety, interpleaded in suit against receiver for principal, set up indemnity agreement, and mistakenly sought enforcement of right thereon which did not exist, it was not thereafter concluded in seeking, in an independent action, through a different remedy and on another theory, the enforcement of such right to which it was legally entitled.

**4. Judgment ⬦735—Surety held not barred from maintaining action on indemnity contract by reason of former decree not involving such right.**

Where surety's right to claim against principal on its contract of indemnity was not involved in previous action wherein surety was interpleaded, and sole issue litigated being prior right of subrogation to defendants, decree therein *held* not res judicata as to subsequent action by surety against receiver for principal on contract of indemnity.

**5. Receivers ⬦152—Surety held entitled on indemnity contract to allowance of claim and pro rata payment of dividends.**

Surety *held* entitled to allowance of claim against principal's estate on contract of indemnity, and to payment of dividends thereon pro rata with other general creditors.

Appeal from the District Court of the United States for the District of Utah; Tillman D. Johnson, Judge.

Action by the National Surety Company against Edward E. Jenkins, receiver of the National City Bank of Salt Lake City, Utah,

*Rehearing denied June 14, 1927.

wherein the American Surety Company and another were interpleaded. Decree for defendant and persons interpleaded, and plaintiff appeals. Reversed and remanded, with directions.

Arthur E. Moreton, of Salt Lake City, Utah, for appellant.

Paul H. Ray, of Salt Lake City, Utah (E. M. Bagley and Robert L. Judd, both of Salt Lake City, Utah, on the brief), for appellee Jenkins.

John Jensen, of Salt Lake City, Utah (A. M. Cheney, L. R. Martineau, Jr., and Harold M. Stephens, all of Salt Lake City, Utah, on the brief), for appellees American Surety Co. and Groesbeck.

Before BOOTH, Circuit Judge, and PHILLIPS and JOHN B. SANBORN, District Judges.

PHILLIPS, District Judge. The National Surety Company brought this action against Edward E. Jenkins, as receiver of the National City Bank of Salt Lake City, Utah, to compel the allowance of its claim upon an indemnity agreement entered into between the bank and the National Company and the payment of dividends thereon. The receiver answered and prayed that the American Surety Company and E. J. Groesbeck be required to interplead in the action. The court entered an order directing that Groesbeck and the American Company appear in the action and set forth their claims, if any, to the assets out of which the National Company sought the payment of dividends. Thereupon Groesbeck and the American Company filed their answer. The answers of the receiver, the American Company and Groesbeck set up the decree in the case of National Surety Co. v. Salt Lake County (C. C. A. 8) 5 F.(2d) 34, and alleged that under the doctrine of res adjudicata the National Company was estopped from asserting its alleged claim upon the contract of indemnity and from receiving dividends thereon out of the assets of the insolvent bank. These answers also alleged that the National Company was not entitled to participate in such dividends until the American Company had been paid in full under its right of subrogation to the claim of Salt Lake county.

The facts material to the determination of the questions here involved are these:

Groesbeck was the county treasurer of Salt Lake county, Utah. On the 3d day of January, 1921, Groesbeck as principal, and the American Company as surety, executed and delivered to Salt Lake county an official

fidelity bond in the sum of $200,000. Groesbeck deposited funds which came into his hands as county treasurer with the bank. To secure such deposit, the bank, as principal, executed and delivered to Groesbeck three surety bonds, one executed by the National Company as surety, in the sum of $125,000, one by the Fidelity & Deposit Company as surety, in the sum of $75,000, and one by the Massachusetts Bonding & Insurance Company, as surety, in the sum of $25,000. These bonds ran to Groesbeck, treasurer of Salt Lake county, Utah, as obligee. The bank also deposited with Groesbeck, as collateral security to further secure such deposit, Crystal Lake Farm Company bonds of the par value of $360,000. The bank, in its application to the National Company for the bond executed by it as surety, agreed to indemnify the National Company for all losses it might suffer by reason of its liability as surety under such bond. After the payment by the National Company of its liability under such bond, it assigned to the American Indemnity Company $5,000 of its claim upon such contract of indemnity.

The bank failed January 17, 1922. At that time, the treasurer's deposit with the bank amounted to $643,094.29. Salt Lake county was paid in full as follows: By the National Company $125,000, by the Massachusetts Company $25,000, by the Fidelity Company $75,000, by the American Company $200,000, and by two dividends paid by the receiver on the deposit of Groesbeck as treasurer. The first dividend amounted to $170,428.28. The second dividend amounted to $56,809.42. At the time the second dividend was paid, the balance due the county was $47,666.01, leaving an overplus of $9,143.41.

On March 10, 1924, Salt Lake county, Groesbeck as treasurer, and the American Company brought an action against the receiver, in which they sought a decree directing the receiver to pay out of the second dividend $47,666.01 to Salt Lake county, and the balance of $9,143.41 and all future dividends to accrue on the deposit of Groesbeck as treasurer, and the proceeds of the Crystal Lake bonds to the American Company. The plaintiffs in that suit asserted that the American Company was subrogated to the rights of Salt Lake county and Groesbeck as treasurer. The receiver answered, setting up that the National Company and Massachusetts Company had paid the sums of $125,000 and $25,000, respectively, on account of the depository bonds executed by them as sureties, and were claiming that they were subrogated to the rights of Groesbeck and the county, and

were entitled to the excess of the second dividend and the future dividends to be paid on account of such deposit, and the proceeds of the Crystal Lake bonds, and prayed that they be required to interplead in the action. On March 28, 1924, the court entered its order directing the receiver to pay the sum of $56,809.42, the amount of the second dividend, into the registry of the court to abide the orders and direction of the court, and ordered the National Company and the Massachusetts Company to interplead in the action, and to show cause, if any they had, why the money and the funds claimed by the plaintiffs in such action should not forthwith be paid to such plaintiffs.

The National Company appeared and filed its answer. It set up its claim to subrogation, and also set up the indemnity agreement, and the fact that it had duly presented its claim thereon to the receiver. The National Company prayed that it be decreed to be entitled to subrogation to its pro rata share of said $9,143.41, and to its pro rata share of all dividends thereafter to be declared by the receiver by reason of the deposit of Groesbeck, as treasurer, and to its pro rata share of the Crystal Lake bonds. It also prayed that the claim of the National Company against the receiver in the sum of $125,000 arising out of such indemnity agreement be allowed and approved, and that the receiver be ordered to pay the National Company dividends thereon. The receiver filed no pleading in response to the answer of the National Company. The American Company filed an answer thereto, in which it denied the right of the National Company to subrogation, and also alleged that it had no knowledge or information sufficient to form a belief as to the truth of the allegations relative to the indemnity agreement, and therefore denied the same. The former cause duly came on for trial. At the commencement of the trial a stipulation was entered into between counsel, by which it was agreed that the balance due Salt Lake county should be paid out of the fund, and an order was entered directing that such payment be made. Counsel for the American Company and the county thereupon announced that the litigation as it then stood was wholly between the American Company on the one side, and the Massachusetts Company and the National Company on the other side, as to which was entitled to the prior right of subrogation to the balance of the second dividend, to the future dividends to be paid on the deposit of Groesbeck as treasurer, and to the Crystal Lake bonds. That was the sole issue tried by

the court and determined and adjudicated by its decree. That was the sole issue considered by this court on the appeal of the case. See National Surety Co. v. Salt Lake County (C. C. A.) 5 F.(2d) 34, where District Judge Faris, speaking for the court, said:

"These cases involve the question of appellants' [National Surety Company and American Indemnity Company] right to share, by way of subrogation, in certain dividends in the hands of one Jenkins, and accruing from assets, which came into the hands of Jenkins, as receiver of the National City Bank of Salt Lake City, Utah, which failed on the 17th day of January, 1922; as also the right of appellants to participate in the proceeds of certain securities in the hands of one Groesbeck.
*  *  *

"The single question is whether, upon the facts stated, the law and the /equities give these remaining dividends and the proceeds of the Crystal Lake Farms bonds, after the county has been paid in full, to the appellant National Surety Company or to the appellee American Surety Company."

While the indemnity agreement of the National Company was pleaded and introduced in evidence, it was upon the theory that it gave a superior equity to the National Company, and because thereof, a prior right to subrogation.

Counsel for the American Company, in a portion of their brief in the former case which was introduced in evidence in the instant case, said:

"As we understand them, the contentions of the National Surety Company ¡are substantially as follows:

"I. That the indemnity agreement of the bank, embodied in the bank's application to the National Surety Company for depository bond, gives the National Surety Company a direct legal right, not to indemnity out of the general assets of the bank as such, but to indemnity out of the dividends declared and payable upon the claim of Mr. Groesbeck.
*  *  *

"It is * * * clear upon principle that the indemnity agreement between the bank and the National must be treated as a separate contractual arrangement affecting only the National and the bank. Whether it constitutes a sufficient basis for some direct claim against the bank is interestingly discussed by the dissenting opinion in the foregoing case of U. S. F. & G. Co. v. Carnegie Trust Company, 177 App. Div. 176, 164 N. Y. S. 92; Id., 221 N. Y. 646, 117 N. E. 1086.
* * * Surely the National cannot, because it has an agreement with the bank for indemnity, push the treasurer aside before he has been paid in full upon his approved claim, and step in and receive dividends on that claim, either to his exclusion or pro tanto. Certainly a surety of the bank cannot, by virtue of an indemnity agreement with the bank alone, be entitled to share ahead of a depositor or a depositor's assignee and subrogee. * * *

"We submit that both upon principle, as a plain matter of contract, and upon the authority of the case above mentioned, there is nothing in the National's so-called indemnity agreement with the bank that gives it any standing or any rights in the present litigation."

The instant case duly came on for trial. The trial court held that the decree in the former case was res adjudicata of the right of the National Company to share in dividends until the American Company had been paid in full. It allowed the claim of the National Company, but decreed that it should receive no dividends thereon until the American Company had been paid in full.

The first question presented is whether the decree in the former suit is a bar, under the doctrine of res adjudicata, to the claim and right which the National Company now asserts.

It is clear that the parties, the trial court, and the appellate court, were of the opinion in the former suit that the National Company's direct claim against the bank on its contract of indemnity and the right to dividends thereon were not there involved. The prior right of subrogation to the dividends on the claim of the county and to the proceeds of the Crystal Lake bonds was the sole issue litigated, the sole question determined by the decree, and the sole question passed upon by this court on appeal. The right of the National Company, because of its contract of indemnity, to participate in the dividends payable on the deposit of Groesbeck as treasurer was denied, but the right of the National Company to participate in dividends as a general creditor upon the contract of indemnity was neither considered nor determined.

[1] The cause of action asserted by the National Company in the former suit was predicated upon its alleged right of subrogation. The cause of action sought to be enforced by the National Company in this case is predicated upon its contract of indemnity. It is a cause of action which is wholly independent of, and entirely separate and distinct from, the alleged cause of action asserted by the

National Company in the former suit. Since the National Company seeks relief in the instant case upon a different and distinct cause of action from the one asserted by it in the former suit, the judgment in the former suit is conclusive only as to such points or questions as were actually in issue and adjudicated therein. Cromwell v. Sac County, 94 U. S. 351, 354, 24 L. Ed. 195; Water, Light & Gas Co. v. City of Hutchinson (C. C. A. 8) 160 F. 41, 45, 19 L. R. A. (N. S.) 219; United Shoe Machinery Corporation v. U. S., 258 U. 451, 458, 459, 42 S. Ct. 363, 66 L. Ed. 708; Owensboro v. Cumberland T. & T. Co., 230 U. S. 58, 76, 33 S. Ct. 988, 57 L. Ed. 1389; 34 C. J. § 1322, p. 911.

In Cromwell v. Sac County, supra, the court said:

"Where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action."

[2] It is true that the National Company, in its answer in the former suit, alleged the contract of indemnity, and prayed that its claim thereon against the receiver be allowed and approved. But such claim was not a proper subject for litigation in the former suit. It was the subject of an independent suit by the National Company against the receiver. The American Company so contended in its brief on appeal in the former suit. Since it is a matter which could not properly have been litigated, and was not actually litigated, and was not necessarily determined by the decree, in the former suit, it is not concluded by that decree, although it was put in issue by the pleadings. Northwestern Port Huron Co. v. Babcock (C. C. A. 8) 223 F. 479; Haines v. Welker & Co., 182 Iowa, 431, 165 N. W. 1027; Kern v. Wilson, 82 Iowa, 407, 48 N. W. 919; Brury v. Smith, 8 Kan. App. 52, 53 P. 74; O'Meara v. McDermott, 43 Mont. 189, 115 P. 912; Sweet v. Tuttle, 14 N. Y. 465; McGee v. Wineholt, 23 Wash. 748, 63 P. 571; American Surety Co. v. White, 142 Va. 1, 127 S. E. 178; 34 C. J. § 1336, p. 930.

[3] And the fact that the National Company set up the indemnity agreement and upon that agreement mistakenly sought the enforcement of a right which did not exist, does not preclude it from seeking in this action, through a different remedy and upon another theory, the enforcement of a right to which it is legally entitled. Barnsdall v. Waltemeyer (C. C. A. 8) 142 F. 415; Water, Light & Gas Co. v. City of Hutchinson (C. C. A. 8) 160 F. 41, 45, 19 L. R. A. (N. S.) 219; Southern Pacific Co. v. Bogert, 250 U. S. 483, 490, 39 S. Ct. 533, 63 L. Ed. 1099; Ash Sheep Co. v. U. S., 252 U. S. 159, 170, 40 S. Ct. 241, 64 L. Ed. 507; Boise Development Co. v. Boise City, 30 Idaho, 675, 167 P. 1032; 34 C. J. § 1232, p. 815; Id., § 1227, p. 806.

In Boise Development Co. v. Boise City, supra, the court said:

"When a party, acting upon a mistaken theory as to his legal rights, brings his action, and is defeated by reason thereof and afterward renews the litigation, basing his claim upon a correct theory, the former judgment is no bar to the second action. Black on Judgments, § 733; Hughes v. United States, 71 U. S. (4 Wall. 232), 18 L. Ed. 303; Freeman on Judgments (4th Ed.) § 260; 23 Cyc. 1226; Keane v. Pittsburgh, etc., Min. Co., 17 Idaho, 179, 191, 105 P. 60; Rowell v. Smith, 123 Wis. 510, 102 N. W. 1, 3 Ann. Cas. 773; Russell v. Place, 94 U. S. 606, 24 L. Ed. 214; Lockett v. Lindsay, 1 Idaho, 324. At most the former case was 'merely illusory and supposititious, and hence it cannot be considered as identical in any just sense of the term, with the true cause of action correctly set up and supported by a right theory of the facts.' Black on Judgments, § 733."

In Barnsdall v. Waltemeyer, supra, the court said:

"But the fatuous choice of a fancied remedy that never existed, and its futile pursuit until the court adjudges that it never had existence is no defense to an action to enforce an actual remedy inconsistent with that first invoked through mistake."

[4] We therefore conclude that the National Company is not barred from maintaining this action under the doctrine of res adjudicata.

[5] Is the National Company entitled to the allowance of its claim upon the contract of indemnity and to the payment of dividends thereon pro rata with general creditors? This precise question came before this court recently in the case of United States F. & G. Co. v. Centropolis Bank of Kansas City, Mo., et al. (C. C. A. 8) 17 F.(2d) 913 (opinion filed February 9, 1927). We there held that

the surety company was entitled to the allowance of its claim and to payment of dividends thereon pro rata with other general creditors. We adhere to our former decision.

The decree appealed from is therefore reversed, and the cause remanded, with instructions to enter a decree directing the receiver of the bank to allow the claim of the National Company, for the sum of $120,000, on its contract of indemnity, as a general creditor and to pay dividends thereon pro rata with the other general creditors, including dividends heretofore paid to general creditors.

The costs of this appeal will be assessed equally against the receiver and American Company.