## FIRST NAT. BANK OF GREELEY, COLO., v. UNITED STATES.

### No. 10333.

District Court, D. Colorado.
Dec. 14, 1934.

Caldwell Martin and Fred Farrar, both of Denver, Colo., for plaintiff.

Thomas J. Morrissey, U. S. Atty., and Ivor O. Wingren, Asst. U. S. Atty., both of Denver, Colo., for the United States.

SYMES, District Judge.

The United States has demurred to plaintiff's bill brought to recover income taxes and interest thereon, alleged to have been paid illegally by the plaintiff as trustee for the Cross Gas Company, for the taxable years 1931 and 1932.

On May 3, 1930, the Cross Gas Company, a Wyoming corporation, sold to the Ohio Oil Company certain oil interests and equipment on which a well was then being drilled, for $125,000 cash, and the further agreement that, if the well upon completion produced an excess of 224 barrels per day, the purchaser, the Ohio Company, would pay the Cross Company $1,000 for each additional barrel of production in excess of 224 barrels average daily production, up to and including 599 barrels average daily production. The well was later completed, and on September 22, 1930, it was determined, under the above contract, that the additional amount to be paid to the Cross Company by the Ohio Company was $375,000, payable out of 25 per cent. of the first net oil marketed from said test well, payable in amounts of not less than $30,000 per year over a period of 12½ years.

After the date of this contract the Cross Gas Company proceeded to dissolve in the manner provided by the laws of Wyoming, and completed the necessary steps July 10, 1930, by the publication of the last statutory notice. On June 7, 1930, and while the proceedings for dissolution were under way, by an assignment in trust (Exhibit A), it conveyed to the plaintiff, the First National Bank of Greeley, all its assets and property of whatever nature including said contract of May 3, 1930, together with all its other property, real or personal, "in trust nevertheless, for the uses and purposes hereinafter set forth." This assignment provided that the bank should hold said assets, including the contract, for the benefit of the stockholders of the Cross Company, sell and convert the assets, receive all moneys due the Cross Company, and, after paying all debts, taxes, and expenses, distribute the balance to the beneficiaries named—the former stockholders —in proportion to the stock held by them in the Cross Company, represented by trustees' certificates issued in exchange for the stock.

The petition then alleges that, upon dissolution of the Cross Company, all its capital stock was surrendered, and the conclusion that the former stockholders became, and were, the beneficial owners and entitled to its assets pro rata; that the assets, as distributed, constituted payments for the stock thus surrendered, and that the stockholders, as individuals, were thereupon vested with the ownership and rights to dispose of the assets of the dissolved corporation.

It is a fact that the Cross Company ceased all operations upon dissolution, and that the plaintiff as trustee did not at any time thereafter carry on any operations or business carried on by the corporation prior to its dissolution.

It is further alleged that, in 1931 and 1932, the Commissioner of Internal Revenue, erroneously applying article 71 of Treasury Regulations 74, ruled that the plaintiff, acting under said trust agreement, was an association taxable as a corporation, upon the theory that the trust was a continuation of the dissolved corporation for income tax purposes; that plaintiff was compelled to make income tax returns and pay an income tax of $2,482.59 and $3,287.88 for those years respectively, which it now seeks to recover.

█ The question presented is: Are the payments received by the bank as trustee under the Ohio Company contract for the years 1931–1932 taxable to the corporation or to the individual stockholders as income? On behalf of the plaintiff it is contended that the corporation was for all purposes fully and completely dissolved before this income is determined or accrued; that the payments collected by the trustee for 1931 and 1932 were necessarily made for the benefit of the individual beneficiaries and could not constitute income to the Cross Company.

Article 548 of Regulations 69, which is the same as article 547 of Treasury Regulations 45, and 71 of Regulations 74, provides that, where a corporation is dissolved, the corporate existence is continued for the purpose of liquidating the assets and paying the debts, and its receivers or trustees, etc., stand instead of the corporation for such purposes. That any sales of property made by them are to be treated as if made by the corporation for the purpose of ascertaining gain or loss. That no gain or loss is realized by a corporation from the mere distribution of its assets in kind upon dissolution.

The Wyoming Comp. Statutes, 1920, governing the dissolution of corporations provide (section 5441) that the directors shall be the trustees of both the creditors and the stockholders of the dissolved corporation, with full power to sue for and collect the debts due the corporation and, generally, to liquidate and settle its affairs. Section 5442, that the title to all property, real and personal, belonging to the dissolved corporation, shall immediately vest in the trustees with a right of action for the recovery of the same, as well as debts due to the dissolved corporation, and section 5443 and section 5444, that the dissolution does not abate actions either in favor of or against the corporation, and the corporation, notwithstanding such dissolution, may prosecute actions in the corporate name, for the use of the persons entitled to receive the proceeds thereof.

In the case at bar, instead of following the statutory method, the corporation transferred all its property to a private trustee for liquidation, but, if the same purpose is to be, and is actually accomplished, the difference is not material.

Under Treasury Regulations and laws of Wyoming, supra, liquidation, even after dissolution, must be effected in the name of, and for, the company. So the conclusion cannot be avoided that all income collected by the trustee is due and belongs first to the company. In spite of formal dissolution, the company still has objects to accomplish, to wit, the liquidation of its assets and debts, and the local statute keeps the corporation alive until liquidation is an accomplished fact.

█ Furthermore, the consent of the state of incorporation is necessary before a surrender of a corporate charter will be effectual as a dissolution. The statutes of Wyoming, supra, like those of many other states, provide that the corporation may have a limited existence for some purposes, even after a dissolution, and it is the law (14A C. J. p. 1151) that a corporation may have a de facto existence for certain purposes after dissolution.

In the case at bar this was more than a perfunctory matter. This contract was at the time, and still is, partly executory. The amount due, if anything, was not capable of determination at the time of the dissolution, and a situation might easily have arisen requiring the trustee to resort to the courts for the enforcement of its terms.

This agreement (Exhibit A) was not an outright transfer and distribution in kind of assets to stockholders, nor did it vest title in them. They simply became beneficiaries of the trustee instead of the corporation. Their beneficial interests were still subject to the corporation's debts. The First National Bank merely became the agent or trustee of the Cross Company to do for it certain acts required by law, both state and federal, before the Cross Company was in fact fully dissolved.

Similar situations are presented and passed on in Taylor Oil & Gas Co. v. Commissioner (C. C. A.) 47 F.(2d) 108; Hellebush v. Commissioner (C. C. A.) 65 F.(2d)

902; Boggs-Burnam & Co. v. Commissioner, 26 B. T. A. 988, and Nibley-Mimnaugh Lumber Co. v. Commissioner, 26 B. T. A. 978.

Of the authorities cited by plaintiff: In Busch v. Commissioner (C. C. A.) 50 F.(2d) 800, the corporation upon dissolution distributed its assets directly in kind to the stockholders who, in turn, deeded to the liquidating trustee. Commissioner of Internal Revenue v. Atherton (C. C. A.) 50 F.(2d) 740, did not involve a corporate dissolution, nor did Lansdowne Realty Trust v. Commissioner (C. C. A.) 50 F.(2d) 56, where the court merely decided that a Massachusetts trust was not taxable as a corporation. And in White, Collector, v. Hornblower (C. C. A.) 27 F.(2d) 777, the determining question was whether the trustees under a Massachusetts trust were conducting the business for a profit or gain.

The demurrer is sustained.